[Crim. No. 21429. Nov. 24, 1980.]

In re GERALD McDONALD ROGERS on Habeas Corpus.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi, Thomas R. Yanger and Ramon M. de la Guardia, Deputy Attorneys General, for Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Mark E. Cutler, Deputy State Public Defender, for Respondent.

OPINION

**BIRD, C. J.**—This court must decide whether the Board of Prison Terms (Board) may utilize a constitutionally defective prior conviction in a serious offender hearing held pursuant to Penal Code section 1170.2, subdivision (b),[1] to specifically add three years to a determinate

---

[1]All statutory references are to the Penal Code, unless otherwise indicated.

sentence of a prisoner who was originally sentenced under the old Indeterminate Sentence Law.

## I.

In 1971, petitioner entered guilty pleas in the Los Angeles Superior Court to two counts of Penal Code section 288. He was sentenced to state prison and paroled from there in 1975. In 1976, petitioner was convicted by a jury of seven felonies and again sentenced to state prison under the Indeterminate Sentence Law (ISL). Additionally, his parole was revoked by the Adult Authority on the 1971 convictions, and he was recommitted to prison for those offenses as well.

The determinate sentence law (DSL) became operative July 1, 1977. Thereafter, the Community Release Board[2] was required by law to determine the proper determinate term for prisoners who had been previously sentenced under the ISL, and who would have been sentenced under the DSL if their offenses had been committed on or after July 1, 1977. (§ 1170.2, subd. (a).) As petitioner was deemed a prisoner who should serve a term longer than that calculated under section 1170.2, subdivision (a), a serious offender hearing was held for him pursuant to section 1170.2, subdivision (b).[3] At the hearing, petitioner introduced a minute order from his 1976 jury trial showing that the trial court had held his 1971 convictions constitutionally invalid. The minute order did not state the reason for the court's ruling.

---

[2]At the time, the Board of Prison Terms was called the Community Release Board.

[3]At that time, section 1170.2, subdivision (b) provided: "If the calculation required under subdivision (a) is less than the time to be served prior to a release date set prior to July 1, 1977, or if a release date had not been set, the Community Release Board shall establish the prisoner's parole date, subject to subdivision (d), on the date calculated under subdivision (a) unless at least two of the members of the Community Release Board after reviewing the prisoner's file, determine that due to the number of crimes of which the prisoner was convicted, or due to the number of prior convictions suffered by the prisoner, or due to the fact that the prisoner was armed with a deadly weapon when the crime was committed, or used a deadly weapon during the commission of the crime, or inflicted or attempted to inflict great bodily injury on the victim of the crime, the prisoner should serve a term longer than that calculated in subdivision (a), in which event the prisoner shall be entitled to a hearing before a panel consisting of at least two members of the Community Release Board as provided for in Section 3041.5. The Community Release Board shall notify each prisoner who is scheduled for such a hearing within 90 days of July 1, 1977, or within 90 days of the date the prisoner is received by or returned to the custody of the Department of Corrections, whichever is later. The hearing shall be held before April 1, 1978, or within 120 days of receipt of the prisoner, whichever is later. The board may by resolution extend this period an additional 90 days. However, such resolution shall have no force or effect if

Despite this evidence, the Board added three extra years to petitioner's determinate term on the basis of the 1971 convictions.[4] The decision of the Board was apparently based on the fact that the trial court had given no reasons on the record as to why the prior convictions were unconstitutional. Petitioner appealed the Board's determination administratively without success.

Subsequently, this petition for writ of habeas corpus was filed in the Sacramento Superior Court. The petition alleged that the Board had exceeded its authority by adding three years to petitioner's term using prior convictions which had been declared constitutionally defective. The trial court issued an order to show cause and found that "the Community Release Board exceeded its authority under Penal Code section 1170.2(b) in extending petitioner's term based on two prior convictions which the sentencing court had declared constitutionally invalid...." The Board was directed to "recompute the determinate term..." and "delete the thirty-six month extension which was based on a prior prison term...."

This appeal by the Board followed.

## II.

 The case law in California is clear that an individual may challenge the constitutional validity of a prior conviction whenever it is used as a basis for augmenting punishment. (*In re Woods* (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913]; *In re Luce* (1966) 64 Cal.2d 11 [48

---

vetoed by resolution of either house of the Legislature. It is the intent of the Legislature that the hearings provided for in this subdivision shall be accomplished in the most expeditious manner possible. At such hearing the prisoner shall be entitled to be represented by legal counsel, a release date shall be set, and the prisoner shall be informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated. In fixing a term under this section the board shall be guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, and further, the board shall be guided by the following finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration."

[4]The Board determined that petitioner's base term should be seven years. It added three years to the base term for the constitutionally invalid priors, and three years for two valid priors. The enhancement based on the latter, valid priors is not challenged here.

Cal.Rptr. 694, 409 P.2d 918]; *In re Tucker* (1966) 64 Cal.2d 15 [48 Cal.Rptr. 697, 409 P.2d 921].) A motion to strike a prior conviction allegation from an accusatory pleading is a proper vehicle for attacking such a conviction if the presence of the prior will activate the "statutory machinery relating to penal status or severity of sanction. . ." in a subsequent criminal proceeding. (*People* v. *Coffey* (1967) 67 Cal.2d 204, 214-215 [60 Cal.Rptr. 457, 430 P.2d 15].) In *Coffey*, this court forbade the use of unconstitutionally obtained prior convictions *"for any purposes in criminal proceedings."* (*In re Dabney* (1969) 71 Cal.2d 1, 11 [76 Cal.Rptr. 636, 452 P.2d 924] (italics added).)

 Subsequent cases have recognized that a court determination that a prior is constitutionally invalid is res judicata as to any related administrative proceedings which seek to impose additional sanctions based on the invalid prior. (*Thomas* v. *Department of Motor Vehicles* (1970) 3 Cal.3d 335, 338 [90 Cal.Rptr. 586, 475 P.2d 858]; *Hasson* v. *Cozens* (1970) 1 Cal.3d 576 [83 Cal.Rptr. 161, 463 P.2d 385]; *De La Vigne* v. *Dept. of Motor Vehicles* (1969) 272 Cal.App.2d 820 [77 Cal. Rptr. 675]; *Mitchell* v. *Orr* (1969) 268 Cal.App.2d 813 [74 Cal.Rptr. 407].)

The Board acknowledges these precedents and concedes that under the ISL it could not have used a constitutionally invalid prior conviction to fix a prisoner's maximum term or minimum eligibility date for parole. (See *In re Wilkerson* (1969) 271 Cal.App.2d 798 [77 Cal.Rptr. 340].) However, the Board contends that, when it converts a "serious offender's" sentence from an indeterminate term to a determinate term, it does not increase the punishment on the basis of the invalid priors but merely considers those priors as one of several factors bearing on the prisoner's fitness for parole. (See *In re Wilkerson, supra*; see also *In re Streeter* (1967) 66 Cal.2d 47 [56 Cal.Rptr. 824, 423 P.2d 976].)

In *Streeter*, this court impliedly held that the Adult Authority, the body then responsible for administering the ISL, could consider constitutionally infirm prior convictions so long as "the prior convictions simply form[ed] a part of the comprehensive body of material on the basis of which the Adult Authority's 'entire discretion' as to term-fixing and parole was to be exercised." (66 Cal.2d at pp. 50-51.) However, the role of the Adult Authority at the time *Streeter* was decided was quite different than that of the Board of Prison Terms. The Adult Authority determined, within the statutory limits of the indeterminate

term, the length of actual incarceration. It had complete discretion in setting a parole date, and customarily did not fix a term until parole was granted.

In *Streeter*, petitioner sought a judicial determination that two prior convictions were unconstitutional. He alleged that the Adult Authority had considered these prior convictions when it refused to fix his term or grant him parole. One of the convictions in issue had never been formally charged against him as a prior. His confinement derived only from his most recent convictions, and the priors did not lengthen the indeterminate sentence he was serving for those convictions. Insofar as the priors affected the statutory minimum term of actual confinement to be served, the issue was found to be moot since he had already served beyond the minimum period.

Under these circumstances, the court held that the prior convictions subjected petitioner to "'penal sanctions'...only in the sense that the Adult Authority, in its administration of the indeterminate sentence law, has or may have such prior convictions within its contemplation." (*Id.*, at p. 50.) "*Realistically, the challenged priors bear at most a questionable effect on the actual matter of term-fixing or parole....*" (*Id.*, at p. 51, italics added.) As a result, the court declined to inquire into the validity of the prisoner's prior convictions.

In *Wilkerson, supra*, 271 Cal.App.2d 798, a prisoner requested the Court of Appeal to command the Adult Authority to grant him parole, arguing that parole "would have been granted but for the existence of two allegedly invalid prior convictions" for robbery. (*Id.*, at p. 800.) The Adult Authority was not using the prior robbery *convictions* in determining the prisoner's *eligibility* for parole, but it was considering the *conduct underlying* those convictions as evidence relating to his *fitness* for parole. Relying in large part upon *Streeter, supra*, the court found it "unnecessary" under these circumstances to examine the constitutionality of the prior convictions. (271 Cal.App.2d at p. 802.)

Neither *Streeter* nor *Wilkerson* is applicable to the present case. Under the statutory scheme of the DSL, the Board of Prison Terms is given no discretion as to the setting of parole. Once a prisoner has completed his fixed term, the Board is mandated to release him. This was not true under the ISL where the Adult Authority was given broad discretion in determining whether an individual should be released on

parole. Indeed, the Adult Authority could refuse to fix a parole date. (*In re Rodriguez* (1975) 14 Cal.3d 639, 652 [122 Cal.Rptr. 552, 537 P.2d 384].) However, under section 1170.2, the Board *must* fix a term and set a specific parole date.[5]

■ Unlike the "questionable" effect of the priors on the prisoner's confinement in the *Streeter* case, the prior convictions here were used to augment petitioner's term of confinement by three years. The effect of the consideration of the priors by the Board was direct and measurable. Finally, the Board did not merely consider the *conduct* underlying the prior convictions as part of petitioner's social history, even though it might have been justified in enhancing the term on that basis. (Cf. *In re Brown* (1967) 67 Cal.2d 339, 342 [62 Cal.Rptr. 6, 431 P.2d 630].) It *specifically* considered the invalid priors as evidence that petitioner was unfit for earlier release.

The Board's finding that the prior convictions represented "a pattern" of criminal behavior was similarly based on the judgment itself and not on any independent evidence of the conduct which led to the convictions. Thus, the enhancement of petitioner's term was based solely on "'assumptions concerning his criminal record which were materially untrue.'" (See *United States* v. *Tucker* (1972) 404 U.S. 443, 447 [30 L.Ed.2d 592, 447, 92 S.Ct. 589] quoting from *Townsend* v. *Burke* (1948) 334 U.S. 736, 741 [92 L.Ed. 1690, 1693, 68 S.Ct. 1252]; *Loper* v. *Beto* (1972) 405 U.S. 473, 483 [31 L.Ed.2d 374, 381-382, 92 S.Ct. 1014]; *Lewis* v. *United States* (1980) 445 U.S. 55, 67 [63 L.Ed.2d 198, 210, 100 S.Ct. 915, 922].) The judicial determination that the priors were constitutionally invalid rendered those priors fundamentally unreliable as evidence that petitioner had committed the offenses of which he was convicted, and that determination must be binding at least with respect to the same criminal proceeding or related administrative proceedings.

By using the invalid prior convictions to enhance petitioner's determinate term by three years, the Board foreclosed the possibility that he might be considered for an earlier release date. This was not permissible.

---

[5]Under these circumstances it is questionable whether the distinction between *eligibility* and *suitability* for parole drawn by the *Wilkerson* case continues to have any valid application.

## III.

█ Next, the Board contends that it should not be bound by a trial court determination that a prior is constitutionally defective if such a determination is made as a result of a motion to strike a prior conviction from an accusatory pleading.[6] The Board maintains that petitioner should be required to initiate proceedings to vacate the judgment before he asserts its invalidity as a bar to enhancement of punishment. This issue was resolved several years ago in *De La Vigne* v. *Dept. of Motor Vehicles, supra,* 272 Cal.App.2d 820. The court stated, "we can conceive of no good reason why a defendant should be required to take a circuitous route and be burdened by multiple suits to secure the identical relief which was achieved in this action [by a motion to strike]. . . . [¶] Had the prosecutor been dissatisfied with the determination made by the judge in the. . .cause with reference to the alleged prior conviction he could have taken steps which were available to him at that time to correct any error in determination if such there was." (*Id.,* at p. 825.)

The same considerations are present in this case. The state had an opportunity to appeal the determination of the trial court and failed to do so. (See § 1238, subd. (a)(1); *People* v. *Burke* (1956) 47 Cal.2d 45

---

[6]The Board asks this court to take judicial notice of the record in the 1976 proceedings to determine the reason the trial court found the priors to be constitutionally defective. However, this court would have to sanction a bypassing of its own rules without good cause as well as violate sound public policy were it to do so.

The Board concedes that the trial court in 1976 found the priors unconstitutional. No appeal having been taken by the People, the court's order has long since become final and its correctness is no longer open to challenge, at least in the context of the same criminal proceeding in which it was rendered or in related administrative proceedings such as the one involved here. The *grounds* upon which the trial court bottomed its determination of constitutional invalidity (i.e., failure to comply with *Boykin-Tahl* procedures) relate to the correctness of the ruling. They are, therefore, outside the scope of the issues properly litigated here.

Furthermore, "[i]t is elementary that the function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to a consideration of matters contained in the record of trial proceedings, and. . .'[m]atters not presented by the record cannot be considered on the suggestion of counsel in the briefs.'" (*People* v. *Merriam* (1967) 66 Cal.2d 390, 396-397, fn. omitted [58 Cal.Rptr. 1, 426 P.2d 161].) As this court noted in *In re Hochberg* (1970) 2 Cal.3d 870, 876 [87 Cal.Rptr. 681, 471 P.2d 1], if the state "bypassed [its] opportunity to present [its] evidence at a postconviction evidentiary hearing [, it is] not entitled to a second evidentiary hearing."

Here, the state could have presented evidence of the court's reasons at the serious offender hearing. It failed to do so. Again, if the evidence was at all relevant to the issues raised, the state could have offered to introduce this evidence at the superior court hearing on the habeas corpus petition. It failed to do so. Based on this dismal record, the state should not expect this court to bend its rules, take judicial notice and thereby augment the record with the 1976 trial proceedings. (See also *People* v. *Zamora* (1980) 28 Cal.3d 88, 96 [167 Cal.Rptr. 573, 615 P.2d 1361].)

[301 P.2d 241]; *People* v. *Davis* (1979) 94 Cal.App.3d 215 [156 Cal. Rptr. 395].) This court has recognized that there is a "sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination." (*In re Crow* (1971) 4 Cal.3d 613, 622-623 [94 Cal.Rptr. 254, 483 P.2d 1206].)[7]

The Board does not allege that the issue as to the validity of these prior convictions was not fully and fairly litigated in the trial court. Further, it does not contend that the application of these rules would work an injustice. In holding that the constitutionally invalid priors may not be used to enhance petitioner's sentence for his 1976 convictions, the trial court did not "wipe out" the prior 1971 judgments of conviction. Petitioner must still "continue to fulfill the conditions of the sentence imposed upon him as a result of the prior conviction unless he successfully moves to vacate or set aside the judgment in the original action...." (*Gonzalez* v. *Municipal Court* (1973) 32 Cal.App.3d 706, 712, fn. 9 [108 Cal.Rptr. 612]; see also *Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 632-634 [137 Cal.Rptr. 681].) Nevertheless, the striking of an invalid prior does preclude the use of that prior to enhance the punishment which may be imposed either in the pending criminal proceeding or in related administrative proceedings.

## IV.

This court does not question the broad discretion given the Board to fix terms under section 1170.2, subdivision (b). However, the Board's

---

[7]*Lewis* v. *United States, supra*, does not compel a contrary result. In that case, the defendant was charged with violating the federal statute that proscribes possession of a firearm by a convicted felon. Prior to trial, the defendant sought to establish the constitutional invalidity of the prior as a defense to the charge. The Supreme Court held that the statute did not permit, and constitutional principles did not require, a collateral attack on the validity of the prior as a defense to the charge. The court distinguished its prior holdings that collateral attacks on invalid prior convictions used to enhance punishment are proper. "In each of those cases, this Court found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction. The federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons.... Enforcement of that essentially civil disability through a criminal sanction does not 'support guilt or enhance punishment,' ...on the basis of a conviction that is unreliable...." (*Lewis* v. *United States, supra*, 445 U.S. at p. 67 [63 L.Ed.2d at p. 210, 100 S.Ct. at p. 922].) Since the holding in *Lewis* is not applicable to the present case, there is no need to decide whether the result in *Lewis* would be the same under California law.

discretion is not without constitutional limits. (See *In re Rodriguez, supra*, 14 Cal.3d 639.) This court has enunciated some of those limits in *Coffey, supra*, and its progeny. Here, the trial court determined that petitioner's 1971 prior convictions were constitutionally defective. That ruling is final as to any related administrative proceedings whose sole purpose is to use the prior convictions to impose additional sanctions on an individual.

Therefore, the trial court's judgment, disallowing such an improper use of the prior convictions, is hereby affirmed.

Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.

**CLARK, J.**—While concurring in the judgment and opinion of the court, I wish to emphasize a statement in that opinion which might otherwise be overlooked: In determining whether petitioner's term should be enhanced, the board may consider the conduct underlying the prior convictions as part of his social history. (*Ante,* p. 436.) Indeed, the board must do so. The Legislature has declared that in fixing a term under section 1170.2, "the board shall be guided by the following finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration." (Pen. Code, § 1170.2, subd. (b).) Petitioner's priors were for violation of Penal Code section 288. Lewd acts on a child under 14 as defined in section 288 have been declared by the Legislature to be "violent felonies" for the purpose of sentence enhancement. (Pen. Code, § 667.5.) Therefore, the board must consider the conduct underlying the priors.

Petitioner's application for a rehearing was denied December 24, 1980.